UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:            05 CV 4415 (ARR)
WINSTON POSADAS,                                    :
                              Plaintiff,    :            NOT FOR
:            PRINT OR ELECTRONIC
     -against-                                         :            PUBLICATION
:
JO ANNE B. BARNHART,                               :            OPINION AND ORDER
Commissioner of Social Security,                    :
                            Defendant.    :
:
------------------------------------------------------------------- X
ROSS, United States District Judge:

       Plaintiff Winston Posadas brought this action pursuant to 42 U.S.C. § 405(g), seeking review of Social Security Commissioner Barnhart's adoption of Administrative Law Judge ("ALJ") Martin Kahn's decision denying plaintiff's request for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). Defendant Commissioner seeks reversal of her final decision and has moved to remand the case for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). Plaintiff agrees that reversal is required, but contends that remand is not necessary because the record contains substantial evidence to establish that he is disabled. Plaintiff therefore cross-moves for judgment on the pleadings, and asks that the case be remanded solely for the calculation of benefits. Alternatively, if remand is required, plaintiff requests that the case be remanded to the Jericho (Nassau County) hearing office rather than the Queens hearing office.

       For the reasons discussed below, the Commissioner's motion is granted and plaintiff's motion is denied. The case is remanded to the Queens hearing office for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

1

## BACKGROUND

Plaintiff was born in 1947 in the Philippines. R. 64. He has a master's degree in Science and Administration and has worked as an accountant, a controller, a director of a work-release program, and the coordinator of a non-profit organization. R. 70, 82, 208.

Plaintiff was hospitalized at the North Shore Hospital on February 8, 2001 due to dizziness, fatigue, and an abnormal electrocardiogram; he subsequently underwent triple bypass heart surgery in March 2001. R. 209-211, 107-27, 179-180. At some point prior to April 4, 2001, plaintiff was diagnosed with Bell's Palsy, with symptoms including facial droop and a speech impediment. R. 175-178. He was treated with steroids and physical therapy. Id. Plaintiff's internist is Dr. Christine Monks at the North Shore University Hospital. R. 71, 213-214, 221. He was initially treated by cardiologists Dr. Frederick Fein and Dr. Allison Spatz at North Shore University Hospital (R. 107) but apparently is currently treated by Dr. Joseph Diamond at the Long Island Jewish Hospital (R. 105, 220-222).

Plaintiff applied for DIB on February 28, 2002, alleging disability since February 8, 2001 due to heart problems, hypertension, Bell's Palsy, and diabetes. R. 64-66, 69.[1] These claims were denied initially on May 14, 2002. R. 41-45. Plaintiff requested and was granted a hearing before an ALJ. R. 39-40, 46. Plaintiff's hearing, before ALJ Martin Kahn, was scheduled for March 29, 2004. R. 51-54. Plaintiff appeared on this date; however, the hearing was adjourned because plaintiff's representative, Douglas C. J. Brigandi, Esq., was unable to appear due to an automobile accident. R. 196-203. Plaintiff appeared, with Mr. Brigandi, before ALJ Kahn on

---

[1] "R." refers to the administrative record filed with the court by defendant Commissioner.

August 9, 2004. R. 24-27, 204-233. Medical expert Edward Sang, M.D. testified at the hearing on August 9, 2004. R. 225-232.

By decision dated October 13, 2004, ALJ Khan found that plaintiff was not disabled. R. 13-23. The ALJ concluded that, although plaintiff's impairments were "severe" within the meaning of the Act, they did not meet and were not medically equivalent to any of the impairments enumerated in the Listing of Impairments at 20 C.F.R. § 404, Subpart P, Appendix 1. R. 20. ALJ Kahn determined that plaintiff was able to perform his past relevant work as an accountant, program director, coordinator, and controller. R. 22. The Appeals Council denied plaintiff's request for review on August 12, 2005, making ALJ Kahn's October 2004 decision the final decision of the Commissioner of Social Security. R. 4-8. Plaintiff initiated the instant action by complaint filed on September 19, 2005.

## STANDARDS OF REVIEW

### A.  SSA Evaluation of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered "disabled" if his impairment is of such severity that he is unable to perform his previous work and, given his age, education, and work experience, he is unable to engage in any other type of substantial gainful employment in the national economy. See 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is disabled, the Commissioner must

consider both objective and subjective factors, including "objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain and disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience." Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) he is unable to engage in substantial gainful activity by reason of a physical or mental impairment expected to result in death or that has lasted or could be expected to last for a continuous period of at least twelve months; and (2) the existence of such an impairment is demonstrated by medically acceptable clinical and laboratory techniques. 42 U.S.C. §§ 423(d), 1382(a); see also Shin v. Apfel, No. 97 Civ. 8003, 1998 U.S. Dist. LEXIS 17755 at *15-16 (S.D.N.Y. Nov. 12, 1998) (citing cases).

The SSA has promulgated a five step process for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.[2] The Second Circuit has characterized this procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is

---

[2]The regulations governing disability determinations for disability insurance benefits (DIB) and for supplemental security income (SSI) are identical. Citations in the remainder of this opinion are to the DIB regulations found in Part 404 of the Social Security regulations. For each DIB regulation located at 20 C.F.R. § 404.15xx, an analogous SSI regulation can be found at 20 C.F.R. § 416.9xx.

4

unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The claimant has the burden of establishing disability at the first four steps of this analysis. At the fifth step, however, the burden shifts to the Commissioner, who must establish that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." Rosa, 168 F.3d at 77; see also Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

**B.     Judicial Review**

This case comes to the court for review of the Commissioner's decision that the plaintiff is not disabled. The court's role in reviewing decisions of the SSA is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making her determination and whether that determination is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983).

It is well established that the Commissioner's decision must be reversed if she failed to apply the correct legal standards in finding that the plaintiff is not disabled. See, e.g., Pollard v. Halter, 377 F.3d 183, 188-89 (2d Cir. 2004); Johnson, 817 F.2d at 986 ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according

to the correct legal principles."); Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal."). ALJs must comply with the numerous procedural requirements established in the relevant regulations and in Social Security Rulings. Molina v. Barnhart, No. 04 Civ. 3201, 2005 U.S. Dist. LEXIS 17981, at *21 (S.D.N.Y. Aug. 17, 2005). An ALJ's failure to adhere to any of these regulations constitutes legal error, permitting reversal of the administrative decision. Id.; see also Toribio v. Barnhart, No. 02 Civ. 4929, 2003 U.S. Dist. LEXIS 10367, at *7 (S.D.N.Y. Jun. 28, 2003).

In the instant case, the Commissioner concedes that ALJ Khan committed legal errors which warrant reversal of the Commissioner's decision. Mem. of Law in Support of Def.'s Mot. for Remand (hereinafter, "Def.'s Mem."), 9. The only issue before the court, therefore, is whether the matter should be reversed and remanded to the Commissioner for (a) further administrative proceedings, or (b) solely for the calculation of benefits. The court has authority to reverse a decision of the Commissioner with or without remanding the matter for a rehearing. 42 U.S.C. § 405(g). Remand for further development of the evidence is appropriate where there are gaps in the administrative record or the ALJ has applied an improper legal standard. See, e.g., Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); Cutler v. Weinberger, 516 F.2d 1282, 1287 (2d Cir. 1975). Remand for additional proceedings is particularly appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, "further findings would so plainly help to assure the proper disposition of [a] claim." Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004) (quoting Rosa, 168 F.3d at 83). On the other hand, when there is "persuasive proof of disability" in the record and "no apparent basis to conclude that a more

complete record might support the Commissioner's decision," further evidentiary development would not serve any purpose. Rosa, 168 F.3d at 83; Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). In that case, the court should reverse the Commissioner's decision and remand solely for the calculation of benefits. See, e.g., Balsamo v. Chater, 142 F.3d 75, 82 (2d Cir. 1998); Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

## DISCUSSION

As noted above, the Commissioner acknowledges that her decision should be reversed due to legal errors by the ALJ, and moves to remand the matter for further administrative proceedings. Specifically, the Commissioner admits that the ALJ failed to adequately develop the record and did not give appropriate consideration to the opinion of plaintiff's treating physician. Id. at 8-10. The Commissioner contends that remand for further proceedings is necessary because the current administrative record (a) is incomplete, and (b) does not establish that plaintiff is disabled. Id. at 10. In fact, the Commissioner notes that the medical evidence on record suggests that plaintiff's heart condition and diabetes are well-controlled and that his Bell's Palsy is resolving. Id. at 10-11.

Plaintiff, on the other hand, argues that a remand solely for the calculation and payment of benefits is warranted. Plaintiff alleges that the current administrative record is complete. Pl.'s Mem. of Fact and Law in Opp. to Def.'s Mot. for Remand, and in Support of His Cross-Mot. for J. on the Pleadings (hereinafter, "Pl.'s Mem."), 2 ("[T]he hospital records are detailed, and there are no gaps."). Citing the treating physician rule, plaintiff argues that the letter from plaintiff's internist requesting that plaintiff "be considered eligible for disability" (R. 144) is supported by

the hospital records, and therefore establishes that plaintiff is disabled and entitled to benefits. Id.

Because I find that the medical evidence on record is inconsistent and incomplete, and that the treating physician's statement is a conclusory request rather than a clear opinion as to plaintiff's medical impairments and their effects on his ability to perform work-related activities, I remand this matter to the SSA for further administrative proceedings.

**1.     Treating Physician Rule**

In general, the SSA gives special deference to the opinions of a claimant's treating physicians. The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's impairments if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Because the treating physician has developed a relationship with the claimant over time and has the benefit of a longitudinal view of the claimant's condition and progress, the treating physician's opinion is considered more valuable than the opinions of consulting physicians, who may have examined the claimant once, and testifying physicians, who may never have examined the claimant. See Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ("What is valuable about the perspective of the treating physician -- what distinguishes him from the examining physician and from the ALJ -- is his opportunity to develop an informed opinion as to the physical status of a patient."); Schisler v. Heckler, 787 F.2d 76, 85 (2d Cir. 1986).

Plaintiff appears to allege that he should be found disabled based primarily upon the letter written by his treating internist, Dr. Christine Monks, on June 10, 2002. Pl.'s Mem., 2-3. In this letter, Dr. Monks explains that she has treated plaintiff since February 2001 for "extensive coronary artery disease," diabetes mellitus, hypertension, and Bell's Palsy with deficits that "have not completely resolved." R. 144. Dr. Monks states that plaintiff recently "underwent a stress test which was positive and subsequently coronary angiography (4/30/02) which revealed three vessel coronary artery disease (LAD, LCX and RCA), patent saphenous vein graft to the LCX, patent saphenous vein graft to the RPDA, and patest left internal mammary artery graft to the LAD." Id. In conclusion, Dr. Monks states that "[b]ecause of the above stated problems it is requested that Mr. Posadas be considered eligible for disability." Id.

Plaintiff asserts that Dr. Monks' letter "provides an opinion as of June 10, 2002 that plaintiff is disabled," and that the hospital records support Dr. Monks' opinion. Pl.'s Mem., 2. Therefore, plaintiff contends, the SSA is required to give Dr. Monks' opinion controlling weight and find him disabled. Id. at 2-3.

The Commissioner agrees that the ALJ erred in failing to address Dr. Monks' request that plaintiff "be considered eligible for disability." Def.'s Mem., 10. However, the Commissioner contends that Dr. Monks' letter does not conclusively establish that plaintiff is disabled. The weight given to a treating physician's opinion depends on the extent to which that opinion is supported by the medical evidence on record. The Second Circuit has repeatedly observed that, "[w]hile the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record. Genuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v.

9

Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (internal citations omitted); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (finding that a treating physician's opinion did not sustain controlling weight where the opinion was "not particularly informative and [] not consistent with those of several other medical experts").

As the Commissioner notes in her motion for remand, Dr. Monks has not actually provided a medical opinion regarding the nature and severity of plaintiff's impairments. Def.'s Mem., 11; see 20 C.F.R. § 416.927(d). It is well-established that the determination about whether a claimant meets the statutory definition of disability is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(1). Accordingly, although a treating medical source opinion on the nature and severity of a claimant's impairments may receive controlling weight, the SSA will not give special significance or weight to a treating medical source's opinion that a claimant is "disabled." 20 C.F.R. § 416.927(e)(3). See also 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").

In the letter cited by plaintiff, Dr. Monks recites the results of plaintiff's most recent cardiac tests and briefly enumerates plaintiff's medical conditions, then "request[s] that Mr. Posadas be considered eligible for disability." R. 144. However, Dr. Monks neither describes the specific nature of plaintiff's cardiac condition nor offers any opinion as to the severity of plaintiff's condition, beyond stating that he suffers from "extensive coronary artery disease." Id. Although Dr. Monks lists recent cardiac function test results, she does not explain the significance of these results with regard to the severity of plaintiff's cardiac condition. Id. Additionally, Dr. Monks does not explain what if any functional limitations plaintiff has as a

result of his cardiac and other medical impairments. Id. Because her letter offers a conclusion on a subject reserved to the Commissioner for decision, rather than an opinion on the nature and severity of plaintiff's impairments, Dr. Marks' suggestion that plaintiff should be found disabled does not warrant controlling weight.

Additionally, even if Dr. Monks' letter were read to express the opinion that plaintiff's impairments significantly restrict his functional abilities, her opinion seems to be contradicted by both her treatment progress notes and by other medical evidence in the record. See Def.'s Mem., 10-11. For example, Dr. Monks's treatment progress notes reflect that defendant was "generally feeling well" (R. 156; see also R. 173-5), "doing very well" (R. 157), and had "no complaints of SOB [shortness of breath] or CP [chest pain]" (R. 156; see also R. 173, 179). Dr. Monks also noted in the treatment progress notes that plaintiff's Bell's Palsy was almost completely resolved as of February 11, 2002. R. 157. Additionally, Dr. Jodh Singh Arora, who examined plaintiff on April 25, 2002, noted that plaintiff's heart had a regular rhythm, no pericardial effusion, normal aortic and mitral valves, and normal-sized chambers. R. 128-129. Although the left ventricle showed evidence of previous myocardial damage, the estimated ejection fraction was 60%, well within the normal range. R. 129. Dr. Arora concluded that plaintiff's prognosis was fair to good. R. 130. Similarly, both state agency medical consultant Dr. S. Gowd, who reviewed plaintiff's medical file as of May 19, 2002, and testifying medical expert Dr. Edward Sang concluded that plaintiff was able to sit for at least six hours, stand for at least four hours, and lift ten or fifteen pounds regularly and twenty pounds occasionally. R. 132-132, 227.

Because plaintiff's treating physician has not provided a clear medical opinion as to the nature and severity of plaintiff's impairments and plaintiff's associated limitations, and due to the

inconsistencies in the evidence currently in the record, the court concludes that remand for further administrative proceedings is appropriate. On remand, the ALJ should seek medical opinions as to the nature and severity of plaintiff's impairments from each of plaintiff's treating physicians, and ask that each physician document the objective basis for their opinion. In assessing whether plaintiff is, in fact, disabled, the ALJ should give full consideration to these opinions in light of the treating physician rule, and provide a clear explanation of how he or she weighed any conflicting evidence in the record.

### 2. Failure to Adequately Develop the Record

Due to the non-adversarial nature of hearing on disability benefits, the ALJ has "an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). See also 20 C.F.R. § 404.1512(d)-(f) (setting forth affirmative obligations of ALJ); Batista v. Barnhart, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004); Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999); Hardy v. Comm'r of Soc. Sec., No. 96 Civ. 5733, 1998 WL 199854, at *5 (E.D.N.Y. Mar. 27, 1998) (noting that "[w]hile the burden of establishing disability rests with the plaintiff . . . the Commissioner is required to develop a complete medical record and make 'every reasonable effort' to obtain all medical evidence from plaintiff's treating sources" (quoting 42 U.S.C. § 423(d)(5)(B)) (internal citation omitted)). Although the ALJ's obligation to develop the record is heightened where the claimant appears pro se, the obligation exists even when the claimant is represented by counsel. See Rosa, 168 F.3d at 79; Perez, 77 F.3d at 47.

Given the treating physician rule, the ALJ has a particular obligation to develop the record with respect to the treating physician. The ALJ must "make every reasonable effort to

obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability." Peed, 778 F. Supp. at 1246. "[R]aw data" or even complete medical records are insufficient by themselves to fulfill the ALJ's duty:

> To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician. It is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and severity of a disability that is to be given deference.

Id. Where no such opinion is included in the existing record, the ALJ should "recontact[] the claimant's treating physician" to obtain this information. Batista, 326 F. Supp. 2d at 353 (internal quotation omitted).

In the instant case, the Commissioner admits that the ALJ failed to adequately develop the record. Def.'s Mem., 10. The Commissioner notes that the ALJ failed, for example, to obtain any records at all from several of plaintiff's treating sources, including plaintiff's cardiologist, plaintiff's physical therapist, and the New York Hospital Medical Center of Queens, and that the ALJ failed to obtain all relevant treatment notes from Dr. Monks.[3] Id. at 9-10. Additionally, the ALJ failed to obtain medical source statements from any of plaintiff's treating

---

[3]Defendant Commissioner suggests that there is some particular significance to absence of treatment notes from Dr. Monks for the one and one-half year period between March or June 2002 and December 31, 2003, the date on which plaintiff last met the insured status requirements. Def.'s Mem., 9. The court notes that plaintiff did meet insured status requirements on his alleged onset date, February 8, 2001. If, in fact, plaintiff was disabled by the combination of his cardiac and other impairments at some point between February 2001 and December 31, 2003, plaintiff should be found disabled and granted benefits for the period of time during which he was disabled. As plaintiff notes, a gap in the evidentiary record before an ALJ does not automatically warrant remand; such a gap is only significant if the evidence in the record is not sufficient to support a determination as to whether the claimant is or is not disabled. Pl.'s Mem., 4-5.

13

physicians regarding the nature and severity of plaintiff's impairments (Id. at 10). For example, although the record contains treating progress notes from Dr. Monks and the letter discussed above, Dr. Monks was apparently not asked to comment on plaintiff's overall prognosis, or on the effects of his medical impairments on his ability to perform the various exertional and nonexertional activities generally required for gainful employment.

On remand, the ALJ should obtain (1) medical records, including treatment progress notes and any relevant laboratory test data, and (2) medical source statements of opinions as to the nature and severity of plaintiff's impairments both at plaintiff's alleged onset date, February 2001, and at present. The ALJ and the Commissioner are reminded that retrospective opinions of treating physicians, like contemporaneous opinions, are entitled to controlling weight unless they are contradicted by other medical evidence or overwhelmingly compelling non-medical evidence. See, e.g., Martinez v. Massanari, 242 F. Supp. 2d 372, 377 (S.D.N.Y. 2003) (citing Shaw, 221 F.3d at 133; Perez, 77 F.3d at 48; Wagner, 906 F.2d at 861-62); Campbell v. Barnhart, 178 F. Supp. 2d 123, 134-136 (D. Conn. 2001).

### 3. Remand to Queens Hearing Office

Plaintiff's counsel requests that this matter be remanded to the Jericho (Nassau County) hearing office rather than the Queens hearing office, which is allegedly "notorious" (Def.'s Mem., 2), unaware that the Social Security Act's "remedial" purpose warrants "liberal[]" application (Id. at 3), unwilling to apply Second Circuit precedent (Id. at 3-4), and a "rogue office" (Id. at 5). However, plaintiff's counsel has not presented any specific allegations or evidence of misconduct endemic to the Queens hearing office which would warrant such an

order. See, e.g., Loper v. Barnhart, No. 05-CV-6563, 2006 U.S. Dist. LEXIS 31966, at *7-8 (W.D.N.Y. May 8, 2006) (noting the Commissioner's decision to voluntarily remand all cases decided by a certain ALJ due to the ALJ's bias, mistreatment of representatives, and general misunderstanding of the applicable standards in some types of disability claims); Pronti v. Barnhart, 339 F. Supp. 2d 480, 492 (W.D.N.Y. 2004) (noting that allegations of bias were supported by "numerous affidavits and exhibits . . . includ[ing] both statistical evidence and anecdotal evidence"). Therefore, the court finds no reason to grant this request.

## CONCLUSION

Remand is appropriate when the Commissioner failed to correctly apply the law and the regulations. See Melkonyan v. Sullivan, 501 U.S. 89, 101 (1991); Rosa, 168 F.3d at 82-83. Remand for further proceedings is appropriate where, as here, further evidence is necessary to ensure that plaintiff's claim is properly evaluated. See Butts, 388 F.3d at 386; Rosa, 168 F.3d at 83. Accordingly, this case is remanded to the Commissioner for further proceedings consistent with this opinion.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
_____
Allyne R. Ross
United States District Judge

Dated: June 29, 2006
Brooklyn, New York

15

**SERVICE LIST:**

*Counsel for Plaintiff:*
Douglas C. J. Brigandi
214-11 Northern Blvd.
Suite 201
Bayside, NY 11361


*Counsel for Defendant:*
John M. Kelly
United States Attorneys Office
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201

16